Thank you, Your Honors. May it please the Court, my name is Allison Goddard, and it's my privilege to represent Plaintiff Kevin Park in this case. I'd like to reserve three minutes for rebuttal. Just watch your time. I'll try to help you a bit. I'll try to, Your Honor. Thank you. Your Honors, the District Court erred in dismissing the second amended complaint and denying leave to amend for the third amended complaint. The crux of the District Court's decision was the enrollment page that was presented by the defendants. There's no question that the enrollment page is just one part of the process that the plaintiff alleges defrauded him and the class of consumers. The Court's decision was based on this incomplete picture of the enrollment process. Defendant has sole possession of the coupon offer that was the lure to this scam, and they did not present it to the District Court. So what we have here is not just a case where the District Court considered documents that were incorporated by reference to the allegations of the complaint. We have a case where the defendant controlled the record, limited what the Court could look at. By refusing to submit one part of the process and only having the Court focus in on the enrollment page. And under this Court's precedent in Operating Engineers v. Gilliam, that was incorrect. Because the plaintiff made specific non-conclusory allegations that the plaintiff, given the circumstances of the transaction, had no reason to realize that he was in a position to be entering a contract with a third party. Are you asking that we send it back with the idea that the District Court would or should have treated this as a Rule 56 situation, converted it into a motion for summary judgment, allowed at least limited discovery, and go from there? Well, Your Honor, to the extent that we're asking that it be remanded so that discovery can be taken and the case can proceed on the merits, that's what we're asking. We don't think that just continuing to focus on this one motion and allowing us limited discovery is sufficient. Because we believe that the plaintiff has pleaded sufficient allegations to stand on its own for the complaint to stand on its own. You agree that it was appropriate to consider the entire enrollment page? No, not without the entire enrollment process, Your Honor. It's like in Williams v. Gerber, for example, this Court... I don't want to divert you on this, but the complaint itself relies on the enrollment page. The complaint doesn't just rely on the enrollment page, it relies on the enrollment process. It relies on the enrollment page. But not by itself, Your Honor. It's a separate issue, but I don't want to go around this. No, I apologize. I don't mean to be argumentative. But the problem that we have is the defendant says, well, our alternative explanation is consistent with the enrollment page. But it's not. Because the way the enrollment page is pled in the complaint is that the plaintiff had no reason to even understand it was a contract. And that's not pled as a conclusion. That's pled by the plaintiff telling the Court in his allegations of facts what the circumstances were. He was transacting with GameStop. In the process of that transaction, this offer popped up. And he had no reason to think that he was giving his email address for any reason other than to give them a way to communicate the coupon offer. And so while the enrollment page is part of the allegations, it can't be seen alone, which is what the defendant successfully did in the trial court. And if you look at Knievel v. ESPN, in that case, the plaintiff in that case tried to do the same thing. The plaintiff wanted the Court to look at the one picture, the one page. And this Court wisely said that's not appropriate in the context of the Internet. Before you even got to this page, you had to see several pages before that. And when you look at all those pages, the caption describing you as a pimp wasn't making an accusation against Evel Knievel that he has engaged in a criminal enterprise. It was a joke. But you could only pick up on that context by looking at the pages that preceded it. Counsel, I had a question for you about the complaint. If you look at page one of the Court's order, which I believe is excerpt of record 11, there's a sentence at line 24. Let me know when you're there. Yes, Your Honor. The Court writes, this new window provided the details of the coupon offer and explained that by providing an email address, the customer would be agreeing to a subscription to a membership fee-based program known as Complete Savings. I read the complaint more than once. I didn't see that anywhere in the complaint, lines 24 through 26. I'm going to be asking the other side the same question. Where did that come from? I understand that's what their argument is. But where in the complaint does it say that the new window provided the details of the coupon offer and explained that by providing this email address? That's not alleged in the complaint, Your Honor. What we allege in the complaint was that the coupon offer popped up and that a new page appeared, but the only thing our client noticed on it was put your email address in and click the big green yes button. Okay, and I'm going to be asking the other side the same question. I want to check with you first. So as far as you're concerned, this is not in the complaint, this allegation here, or this statement on page one of the order lines 24 to 26? Your Honor, if you look at the complaint itself, if you look at paragraph 13, and I'm at excerpt of record 413, it says that he clicked on the coupon and what he saw was a direction to enter his email address, not the terms and conditions of a coupon offer. It says he entered his email address on the enrollment page so that he could receive the coupon and get back to the GameStop page. But the terms and conditions were on the enrollment page. I understand, Your Honor, but when that page popped up, he had no idea, based on clicking on a coupon offer, that there were even terms and conditions. So it's not like, for example, being in a car dealership when you're taken to the business office after negotiating the price and you're given a stack of documents and you know in that situation you're about to buy a car. And if you choose not to read those documents, that's on you. But that's not the situation at all. Our client wasn't in the business office after negotiating a car. He just purchased something from GameStop and had gotten an offer to save money off his next purchase. Counsel, I want to return to what I said before. I didn't give you all of the background for why I said what I did. There's a case called LS versus WebLoyalty.com from the Second Circuit from this last year, which seems to be essentially on all fours. The same claims that were made by them here were made there. The Second Circuit indicated that basically they could not, the court could not consider what the district court did here. Instead, it had to convert it to a summary judgment and allow limited discovery. I wanted you to comment, I assume you know about that case, to comment on what we should draw, if anything, from the Second Circuit's reasoning in that case. Well, I think the problem with that case, Your Honor, is that the Second Circuit's reasoning really relied on the district court's reasoning in this case and Judge Huff's reasoning in the Berry case, which Judge Burns relied on. So it's a circular reliance. So if you were to look at that, the LS versus WebLoyalty case, and use that as the guiding direction, even though it's only persuasive authority and it certainly doesn't bind this court, you're just basically making the same, adopting the same errors that the lower court made here. That's interesting you say that, because if I understood the Second Circuit's instruction, they said you've got to have this treated as a summary judgment. It's not a 12 v. 6 situation. You can't go behind what's on the face of the complaint and treat what the district court did here as being the, if you will, the predicate for disposing of the case. You've got to allow discovery and go on the basis of a summary judgment. I would have thought that would have been very helpful to you. You don't seem to be treating it that way. Why is that? Well, I think, Your Honor, the problem is it shouldn't be, what's going to happen if that occurs? If you look at the practical effect of that, if we're still stuck in this confines of the pleadings and you get limited discovery when you get remanded, we've met the standard. There's no reason to limit our case in that way to the confines of turning this into a Rule 56 motion based only on the narrow issue of the enrollment page. So you want us to consider this strictly on the basis of the face of the complaint. If it were sent back, you would not want any instruction like what the Second Circuit said to the district court. You would just want it to be an open record, if you will, and start all over again. Is that correct? What we would want is for the order of dismissal to be reversed because it was improper. Right, I understand that. And because the pleading stands on its own, because we've met the standards for a plausible pleading under Iqbal and Twombly. And then the case would proceed as any other case where discovery would be open, we would be able to take full discovery. Can I ask you about that LS case? There are really two parts, I think, to your EFTA claim. The first is based on this unauthorized electronic transfer, and the second is based on the failure to provide him with a copy of the funds transfer authorization. There is an email that they allege in their complaint that indicates they provided you with the information with respect to the failure to provide a copy. But I take it that was not incorporated into the complaint, and at least that would fall if we followed the Second Circuit's reasoning. And I want to make sure I understand your question, Your Honor. Are you asking if we believe that that confirmation email satisfied the requirements of the EFTA? Well, with respect to your claim that they didn't provide you with a copy of the funds transfer authorization. Yes, Your Honor. So our position is that that does not satisfy the requirements of the EFTA, for the same reason that the enrollment page cannot be authorization. It's a different argument, sort of. There's an email that would rebut that cause of action, but was that improperly taken judicial notice of in the same way that the Second Circuit held, in the manner that Judge Smith just described to you? Well, it was improperly considered by the court, and it's a little bit of an odd situation because the court on the one hand said, I'm not going to take judicial notice of it. But then on the other hand, the court said, I'm going to consider it as an exemplar. And then what essentially the court did was it considered it as evidence that a confirmation had been sent. And there's that procedural aspect of it that we disagree with, but substantively we also disagree that you can send an email, which our client did not receive or has no recollection of, when he would have no reason to look for it. As far as I can tell, the complaint doesn't deny receiving it. But all I'm asking you is that on that aspect of it, you win if we follow the Second Circuit, at least. Right. We agree, Your Honor. I feel like I'm not answering your question, though. Well, you've answered it in part. But the other part of the Second Circuit case, in terms of the unauthorized electronic transfer, they dismissed that case based, as I understand it, on the enrollment page. That's correct, Your Honor. And how do you distinguish it? The L.S. case? Yes. I would say it's not binding on this court. It was the wrong decision. It was made according to the same logic that the district court employed here. So to adopt that analysis would be simply to rubber stamp the lower court's opinion. I see I'm down to two minutes. You can save your time if you want, Counsel. Okay. I'd like to reserve, if possible, but I don't want to leave questions on the table. No, that's fine. Thank you. Good morning. Good morning, Your Honors. James Prendergast for Web Loyalty. Before I get into the substance of my discussion, I'd like to answer some questions or address some of the comments made by the court. First, with regard to the L.S. Web Loyalty case, just so we understand its procedural posture, the court did not send the case back for summary judgment proceedings. It sent it back for summary judgment proceedings on only one tiny portion, and that portion has to do with whether or not Web Loyalty delivered a copy of the authorization under the EFTA. With respect to the principal claims. And what do you say about that? What do I say about that? Two things. That doesn't apply here? I say it doesn't apply for two reasons, Your Honor. If we think about the copy claim, number one, as a matter of incorporation by reference, frankly, I think the Second Circuit is wrong for not considering the e-mails that provided the confirmation of authorization. Where were the e-mails? I'm sorry? The e-mails weren't incorporated in the complaint. In our view, Your Honor, we believe that this circuit, particularly in a case like Knievel, which counsel has referenced, has said that if the claim depends upon the document, even if it's not referenced in the complaint, then this court has the right to consider it as a matter of incorporation by reference or judicial notice. And in Knievel, this court did that, even though it wasn't done below. So if the element of the offense is that they didn't receive this confirmation. Then here's the confirmation, and the court can consider it, in our view, under Knievel. However, I will mention one other part, and I would like to get back to the LS matter. But with respect to copy, and we argued this, I believe, below. The EFTA regulations with regard to the delivery of copy are very flexible. They specifically call out that this can be done and can be met in various ways. And specifically in the guidance of the staff that is published in support of the EFTA, it says that one way to do it is to simply have two copies of the contract and to let the plaintiff take one home, or to let the consumer take one home. If we look at the enrollment page here, which I think will be incorporated by reference, it specifically directs the plaintiff to keep a copy for himself. It is one of the various ways in which web loyalty met its burden of delivering the copy. It is specifically intended to be a flexible standard. I'm sorry. Can we just shift a little bit here because we don't have a whole lot of time? Certainly. I'm still troubled by the court's use of the exhibits that you proffered, because the court specifically indicated that it did not intend to take judicial notice of these, and yet it relied upon them. And the court also indicated that they were subject to reasonable questions about their authenticity. How can we sanction a district court relying upon that type of evidence at the pleading stage? Well, two things, Your Honor. Number one, this court is certainly free itself to incorporate by reference and has done it a number of times where the district court has not done it below. Well, sure. That's in the case of Davis, Freeman, Knievel. Excuse me. This is evidence, if you will, that's been proffered where the district court specifically says, I'm not going to take judicial notice, I don't know whether it's reliable, and then relies upon it. That's a little different than the other cases, isn't it? Frankly, Your Honor, I would disagree with your characterization of what Judge Burns did. Okay. He, in instructing the plaintiff to file a motion to amend, instructed the plaintiff to identify by factual allegations in that proposed amended complaint, those allegations which would dispute the authenticity of the documents for the purposes of incorporation by reference. However, specifically, the plaintiff was unable to do so and conceded that he was not in a position to determine whether the screenshots submitted are an accurate and authentic representation of the entire communication displayed to consumers. That is not a dispute regarding its authenticity or reliability. The plaintiff is specifically saying that he cannot dispute that. That is enough for this court, certainly, to take view of those records. What's your best case to that effect? The best case to that effect, that Knievel would be one of them in order to take judicial notice of that record. And I would simply point to Rule 901 of the Federal Rules of Evidence, which talks about authenticity, and is simply demonstrating that it is what it purports to be. And that's why you should take a look at the enrollment page. But let me address the counsel's discussion of this coupon offer on the page preceding the enrollment page. Judge Byrne specifically dealt with this. He spoke about plaintiff's allegations regarding the so-called dynamic process and rejected those allegations under Iqbal and Twombly, specifically because the plaintiff's allegations were conclusory and vague. More particularly, in describing what happens in this dynamic process, particularly the small coupon banner, which took you to the enrollment page with the full terms and conditions, the plaintiff never says and never identifies a false or misleading statement. I know, but isn't the whole page designed to mislead? Absolutely. As I look at that page, it was designed to mislead. The enrollment page itself not? Maybe you had everything in there that you should, and I don't want to get into the size of the print and what designed to lure the consumer into it. In fact, Congress has passed a statute just to deal with this. It's passed a statute on the limited term of the data pass, and I will talk about that in a moment. Oh, I understand that. But in terms of the page itself. The data pass is probably a significant part of this. But the page itself is not designed to mislead. There are at least seven places in which these terms and conditions. If there were discovery in this case about how this page came to be designed for this dynamic process, isn't it plausible that one would find that this was done deliberately in an effort to achieve the result that in fact happened here and what Congress may have suggested in a report happens in an overwhelming number of cases? Obviously, I would say no, Your Honor, given the design of the page, which importantly and important to this court in the Freeman matter. You're saying it now based on the design or based on what you know? Based upon the design. Certainly not based upon every email that may be out there. I don't know that record at the moment. I'm talking about whether or not the plaintiffs have alleged a plausible case of deceit here. And consistent with this court's ruling, in cases like Davis and as well as Freeman, in particular Freeman, and remember the Fifth Circuit as well in Vistaprint noted this, that right where the plaintiff is giving his authorization, the disclosures appear right there. That was critical to this court, again, on a motion to dismiss in Freeman where the court was considering material incorporated by reference. That was critical to the court to conclude that the matter was not deceptive and it was not a deceptive solicitation. I must say I share some of Judge Quarman's concerns. Looking at the face of it, it's pretty deceptive to me. So if I feel that way, my sense is that the only way to really get to the bottom of this is to have some discovery done, as my colleague suggests. With all due respect to Judge Burns, this looks like a trap. Your Honor, as the Second Circuit said, the offer is nothing more than that. It is an offer. The Second Circuit found this not to be deceitful based upon exactly the same kind of situation. The Second Circuit said on page five of its opinion, but Pellant does not allege that he relied on the coupon offer in enrolling in the program. He or he does not allege that. I apologize, Your Honor. I'm sorry. I'm sorry. The Second Circuit in its opinion says that the appellant does not allege that he relied on the coupon offer in enrolling in the program. There is such an allegation here. That he relied upon the coupon offer. Yes. But the problem is there is no allegation that the coupon offer was misleading. If we go down the route that the plaintiff is suggesting right now, any plaintiff, any consumer can simply say, I received a coupon offer and therefore I am excused from reading all the terms and conditions. There were no additional allegations regarding that coupon offer. If there was a false statement, whether it was misleading or what have you. This is the reason we have cases like. Wasn't this whole thing designed to get him to agree without even giving a credit card number for his. Your Honor, if that were the case, it would follow much more the kinds of cases where that has been found. In other cases where that has been found, there's been no disclosure that the data pass has happened. There's been no disclosure. This is happening five different times, seven different times actually in the page. And the page is replete with you are joining a program. And that to get the coupon offer, you must register to join the program. When the plaintiff is taken to the page, he can't click on that coupon in order to do it. He has to go to the authorization section. First of all, as I understand, he doesn't get a coupon under this. He gets a coupon code. That's correct. After the fact. It's not this big coupon that. That's on the page. That certainly dominates the page. But you have to read the coupon, Your Honor, two things. One, in the coupon itself, it says you get the coupon for joining Complete Savings. To the left of the coupon, it says sign up for Complete Savings and you get the coupon. Register for Complete Savings and you get the coupon. And right below, and I do think that this is the part that really shows this is not a deceptive page, and that is at the authorization point. Maybe if you read the whole page carefully with a possibly magnifying glass. Respectfully, Your Honor, I don't think that. My impression is that this whole page is designed to deceive. The whole design of it is designed to deceive, and I suspect that if they ever got into discovery about how it came to have, I guess graphics is the right word for it, it came to have this design, it was because it was based on an assumption that people would just sign up without being careful. Okay, well, two things, Your Honor. One, respectfully, I would disagree with your review of the page. And two, I would come back to what is the plaintiff's burden here now. Not that there is some hope in discovery. I might find some piece of evidence about intent. The question here is whether or not, in what the allegations the plaintiff has presented, demonstrate a deceptive advertising. Clearly, the Second Circuit found that it was not so. And you have on the page, again, coming back to the authorization, very clear where he enters his authorization, the disclosure of both the amount of the membership, the fee for the membership, and the fact of the data pass. Let me jump in here. I'm going to go back to my question I had for opposing counsel. ER page 11, first page of the district court's order, lines 24 through 26, talks about the new window. Where did that come from? The new window? Well, it says here. Well, he does talk about a window. The complaint, and I apologize that I don't have it right in front of me, does talk about a new window popping up. Here's what the district court says. It says the new window provided the details of the coupon offer and explained that by providing an email address, the customer would be agreeing to a subscription to a membership fee-based program known as complete savings. Right. Is that in the complaint? What is in the complaint is that the new window popped up. Plaintiff says that they saw that. Hold on. The sentence I just read, is it in the complaint, yes or no? The way he writes that, I don't believe so, no. So where did it come from? It comes from the enrollment page. But I thought the district court said he wasn't relying on that. He said he was relying upon it to the extent that it demonstrated the types of disclosures that could be provided here consistent with what the plaintiff said. Isn't that the problem? It's kind of like either you're pregnant or you're not. Isn't that the situation we're in here? Either he was relying on it or he wasn't. And it sounds like I don't know where else this came from. Well, Your Honor, respectfully, I think that he does rely upon it when he gets to the amended complaint, the third amended complaint, and when he gives the plaintiff a chance to come back with allegations that way, that challenge the authenticity, which they aren't able to do. Okay. But just so we're clear, the district court, unless I'm remembering this incorrectly, said he was not relying on these documents, correct? Correct. In the first opinion, yes. But you just said that he did. He did in the second opinion, which is both of them are up here, in the second opinion, which was preceded by in order to give the plaintiff a chance to challenge the authenticity, which the plaintiff was unable to do, which takes away the impediment for incorporating this by reference and considering them. Would you have signed up for this? Probably not, because I don't shop. You don't shop. You look very nice. I thank only my wife. Very quickly, in closing, we believe that the district court was right here. The district court observed that the disclosures were prominent and clear, that the disclosures were made repeatedly, and it was made clear to the plaintiff he'd be charged for this membership and that he'd be dealing with an entity other than GameStop. Counsel, I'm afraid your time is up. Oh, then that's it. Thank you very much. Oh, sorry. What's your position on the state law causes of action? The state law causes of action have no merit. With regard to unfairness. The circuit thought they had merit, at least. I believe that what the Second Circuit said was that Judge Haight of the District Court of Connecticut did not reach the question of unfairness as an alternative ground for his CUTPA claims, which would be similar to the UCL claims. In this case, Judge Burns very specifically went through the grounds for why he concluded that this not only was not deceptive, but also was not unfair to the plaintiff, including many of the elements that I mentioned here. Thank you, Counsel. Counsel, you have a little bit of rebuttal time left. Okay. Thank you, Your Honors. I just want to point out, I thought the question was good about, well, shouldn't this go to discovery? Or the point was good, shouldn't this go to discovery? It should. And if you look at our complaint, we attach the Senate reports, but we don't just allege conclusions based on those. There are allegations based on documents produced by WebLoyalty to the Senate that would be subject to discovery. And these documents included information that showed information that consumers are four times more likely to sign up if they're not required to provide their billing information. That's at the ER-460. That the rate of benefit usage for WebLoyalty members that were enrolled through DataPass is between .2% and 11.4%. 70% to 80% had never viewed the website for the rewards program. That's at ER-467. Those are from WebLoyalty's documents. The strategy here is to get the court to make a decision without a complete record so that we never get there. And the allegations of the complaint are sufficient and plausible to get us past the pleading stage. And just very quickly, with respect to the claim that plaintiff hasn't alleged any affirmative misrepresentations, well, that's not the standard. As the court pointed out, the process, the scheme, is deceptive in and of itself. You're trying to trick someone to do something. Truthful disclosures, as the court has found in cyberspace, for example, can still be the basis of a fraud and misrepresentation claim. The trick, even if it said, click here for a coupon, down the road you would potentially get a coupon, but the coupon offer didn't say, if you sign up for rewards, we'll give you a coupon. It just says, click here to get a coupon. That's what we allege. And they won't let us or the court argue what the actual text of that coupon offer is. Thank you. Thank you very much. Thanks to both counsels for your argument.
judges: M. Smith, Owens, Korman